# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**Misc. Dkt. No. 2024-07**

————————————

**In re JF**
*Petitioner*

**David H. HER**
Technical Sergeant (E-6), U.S. Air Force
*Real Party in Interest*

————————————

Petition for Extraordinary Relief in the Nature of a Writ of Mandamus

Decided 25 June 2024

————————————

*Military Judge*: Jennifer E. Powell.

*GCM convened at*: Kunsan Air Base, Republic of Korea.

*For Petitioner*: Captain Kyle S. Hoffmeister, USAF; Captain Sonya Tomasiewicz, USAF; Devon A. R. Wells, Esquire.

Before RICHARDSON, DOUGLAS, and KEARLEY, *Appellate Military Judges.*

Senior Judge RICHARDSON delivered the opinion of the court, in which Judge DOUGLAS and Judge KEARLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

RICHARDSON, Senior Judge:

Technical Sergeant David H. Her (Accused) faces three charges at a general court-martial at Kunsan Air Base, Republic of Korea. Petitioner is the named victim in one of three specifications alleged in violation of Article 120, Uniform

Code of Military Justice (UCMJ), 10 U.S.C. § 920.[1] Accused also faces one specification each in violation of Articles 128 and 128b, UCMJ, 10 U.S.C. §§ 928, 928b. Petitioner requests we issue a writ vacating the military judge's order to produce records pertaining to her. We find issuance of a writ is not appropriate.

## I. BACKGROUND

Accused is alleged to have sexually assaulted Petitioner on or about 18 December 2021. In preparation for the court-martial, the Government interviewed a witness who said Petitioner was "in in-patient care around the time of March or April 2022." According to a paralegal present during that interview, the witness said Petitioner "enrolled herself into an inpatient care [program] to help deal with her situation she was currently going through." The Government notified the Defense of these statements. Thereafter, the Defense requested diagnosis and treatment records of Petitioner in the custody or control of military authorities, as well as confirmation of the existence of inpatient treatment records not under military authority.

The Government submitted a request to the regional Defense Health Agency (DHA) requesting diagnoses, treatments, and prescriptions contained in Petitioner's mental health records. Mr. VC from the Office of General Counsel (OGC), on behalf of the regional DHA, replied that "the requirements under [Department of Defense Manual (DoDM)] 6025.18, para[graph] 4.4.e.(1)(c) are not met" and "[a]bsent a qualified protective order satisfying the requirements under para[graph] 4.4.e.(1)(e), DHA is unable to release the requested records without violating [the Health Insurance Portability and Accountability Act]."

The Defense filed a "Defense Motion for Release and Protection Order" with the trial court. In its motion, the Defense requested the military judge issue DHA an order to produce the records, conduct an in camera review of those records, and issue a protective order for the produced records. The Government generally agreed with the defense motion, specifically stating it did not oppose in camera review to determine discoverable information, and affirmatively requesting a protective order over any such information. Through counsel, Petitioner contested the defense motion, stating the military judge must apply Mil. R. Evid. 513, including holding a hearing, before ordering any action with respect to her records. After reviewing the filings, the military judge asked the

---

[1] Reference to the Article 120, UCMJ, specification involving Petitioner is to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*). All other references to punitive articles of the UCMJ are to the 2019 *MCM* or the *Manual for Courts-Martial, United States* (2016 ed.), as appropriate. All other references to the UCMJ, Military Rules of Evidence, and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2024 ed.).

parties and the victim to supplement their filings, addressing specific questions; they did. The Government's supplemental filing added a suggestion that the military judge order "an affidavit from [Petitioner's] mental health provider to disclose relevant diagnosis and medications in order to prevent unauthorized disclosure of privileged information." The positions of the Defense and Petitioner stayed much the same.

On 3 June 2024, the military judge issued a ruling, and accompanying production and protection orders. She found Rule for Courts-Martial (R.C.M.) 701, relating to discovery, applied, and not R.C.M. 703. Referencing the communications between the Government and Mr. VC, she found DHA "is a Department of Defense [ ] covered entity."[2] Citing *United States v. Mellette*, 82 M.J. 374 (C.A.A.F. 2022), *cert. denied*, 143 S. Ct. 2637 (2023), she found the Defense had requested information not protected by Mil. R. Evid. 513, specifically diagnosis, treatment, and prescription information. Consequently, she found "a closed hearing in accordance with [Mil. R. Evid.] 513 is not ripe" and "[Petitioner] does not have standing to be heard on defense counsel's motion." Additionally, the military judge found:

> [D]efense counsel showed by a preponderance of the evidence that the requested items are within the possession, custody, or control of military authorities based on trial counsel's witness interview revealing that [Petitioner] sought in-patient care 3–4 months after the charged sexual assault, [Petitioner's] status as a military member, subsequent disclosure to defense counsel as part of discovery for the above-captioned case, and the parties' confirmation that the requested non-privileged evidence are [sic] in the possession of DHA and accessible by Air Force military treatment facilities [(MTF)]. . . . Specifically, this [c]ourt finds that defense counsel met its burden demonstrating the relevance of [Petitioner's] diagnoses, treatments, and prescriptions associated with in-patient care sought by [Petitioner] in March–April 2022 to defense preparation under R.C.M. 701. As a named victim on the charge sheet, [Petitioner] is likely the primary witness related to one of the charged offenses in the [A]ccused's court-martial, and her non-privileged mental health diagnoses, treatments, and related prescriptions meet the low threshold for relevancy under the R.C.M. 701 discovery process. Pursuant to Article 46(a), [UCMJ, 10 U.S.C. § 846(a)], defense counsel shall

---

[2] How the military judge relied on this communication is not clear. She may have given weight to the fact that Mr. VC applied binding guidance from a Department of Defense Manual.

have equal opportunity to obtain evidence relevant to defense preparation.

. . . .

[T]he evidence defense counsel seeks are [sic] relevant to their pursuit of evidence relevant to the primary witness' credibility.

. . . .

Furthermore, consistent with *Mellette*, [82 M.J. at 375,] this [c]ourt finds that any diagnoses or treatments are not themselves uniformly privileged under [Mil. R. Evid.] 513. Accordingly, [Mil. R. Evid.] 513's procedural requirements are not required as defense counsel does not seek production of such records. Moreover, this [c]ourt does not find it necessary to conduct an *in camera* review of any materials subject to the [c]ourt's production order.

(Footnotes and citations omitted).

The military judge's order to produce Petitioner's records stated, *inter alia*:

1. It is hereby ORDERED that the records custodian at the [applicable MTFs], shall deliver **as soon as practicable and no later than 1700 (EST) on 17 June 2024**, from [Petitioner's] records within the custody of the DHA and maintained at the [MTFs] between 1 March 2022 and present the following:

   a. A list of any mental health diagnosis or diagnoses (from 1 March 2022 to present);

   b. A list of any prescriptions related to such diagnosis or diagnoses; and

   c. A list of medical treatments (from 1 March 2022 to present).

2. In complying with this court order, and making the necessary redactions to the responsive records, [MTFs] should work closely with a medical law attorney.

3. The appropriate medical professional, in coordination with the medical law attorney, will ensure any responsive records are redacted of all information not specifically identified in paragraph 1a–c above.

4. **None of the responsive records should include confidential communications between [Petitioner] and any mental health provider.**

. . . .

> 7. Once these records are delivered to the Government, an attorney unaffiliated with the above-captioned court-martial will immediately review the records to confirm their compliance with the [c]ourt's previous ruling and *United States v. Mellette* before providing them to the Defense in discovery. Thereafter, the records will be subject to a protective order, wherein <u>only</u> the Government, Defense, and their appointed expert consultants will have access to the disclosed records, in addition to [Petitioner] and her [v]ictims' [c]ounsel.

The military judge's protective order restricted access to the records as identified in the production order, and outlined the handling of those records.

On 7 June 2024, Petitioner filed a two-part petition: relief in the form of a writ of mandamus under Article 6b, UCMJ, 10 U.S.C. § 806b, and a motion to stay the military judge's order. Specifically, Petitioner asked for "an immediate stay of the order to produce her protected, confidential, and private [protected health information (PHI)]" and "issuance of a writ of mandamus demanding compliance with [Mil. R. Evid.] 513(e) procedures before accessing such information." This court docketed the petition the same day, and on 9 June 2024, the Government filed opposition to Petitioner's request for a stay.

On 10 June 2024, this court denied the requested stay. On 12 June 2024, Petitioner filed a Motion for Leave to File Motion to Reconsider Denial of Stay. We hereby deny reconsideration of our 10 June 2024 decision.

## II. LAW

"This court has jurisdiction over a petition under Article 6b, UCMJ, which establishes a victim's ability to petition this court for a writ of mandamus when the victim 'believes . . . a court-martial ruling violates the rights of the victim afforded' by that article." *In re KK*, ___ M.J. ___, Misc. Dkt. No. 2022-13, 2023 CCA LEXIS 31, at *6 (A.F. Ct. Crim. App. 24 Jan. 2023) (omission in original) (quoting Article 6b(e)(1), UCMJ, 10 U.S.C. § 806b(e)(1)). "If granted, such a writ would require compliance with Article 6b, UCMJ." *Id.*

The purpose of a writ of mandamus is to "confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Association*, 319 U.S. 21, 26 (1943) (citations omitted). A writ of mandamus "is a 'drastic and extraordinary' remedy 'reserved for really extraordinary cases.'" *EV v. United States*, 75 M.J. 331, 332 (C.A.A.F. 2016) (quoting *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380 (2004)) (additional citation omitted).

In order to prevail on a petition for a writ of mandamus, a petitioner "must show that: (1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (per curiam) (citing *Cheney*, 542 U.S. at 380–81); *see also In re KK*, 2023 CCA LEXIS 31, at *9–10 (rejecting abuse of discretion as the standard to determine mandamus relief and endorsing the traditional mandamus standard in *Hasan*).

"A military judge's decision warranting reversal via a writ of mandamus 'must amount to more than even gross error; it must amount to a judicial usurpation of power . . . or be characteristic of an erroneous practice which is likely to recur.'" *In re KK*, 2023 CCA LEXIS 31, at *6 (omission in original) (quoting *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983) (per curiam)).

"Victims involved in court-martial proceedings do not have the authority to challenge every ruling by a military judge with which they disagree; but they may assert their rights enumerated in Article 6b, UCMJ, in the *Manual for Courts-Martial*, and under other applicable laws." *Id.* at *13. Article 6b(e)(1), UCMJ, 10 U.S.C. § 806b(e)(1), states:

> If the victim of an offense under this chapter believes that . . . a court-martial ruling violates the rights of the victim afforded by a section (article) or rule specified in paragraph (4), the victim may petition the Court of Criminal Appeals [(CCA)] for a writ of mandamus to require the . . . court-martial to comply with the section (article) or rule.

Article 6b(e)(4), UCMJ, provides that this right to petition the CCA for a writ of mandamus applies with respect to protections afforded by, *inter alia*, Article 6b, UCMJ, and Mil. R. Evid. 513; it does not reference Article 46, UCMJ, or any other section or rule regulating production of evidence. Article 6b(a)(9), UCMJ, provides that the victim of an offense under the UCMJ has, among other rights, "[t]he right to be treated with fairness and with respect for the dignity and privacy of the victim . . . ."

"After service of charges, upon request of the defense, the Government shall permit the defense to inspect any . . . papers, documents, [or] data . . . if the item is within the possession, custody, or control of military authorities and [ ] the item is relevant to defense preparation." R.C.M. 701(a)(2)(A)(i). Upon a defense showing of its "relevance and necessity," the prosecution provides to the defense "[e]vidence under the control of the Government." R.C.M. 703(f), (g)(2).

Mil. R. Evid. 513(a) provides that, in general:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made

> between the patient and a psychotherapist or an assistant to the psychotherapist, in a case arising under the [UCMJ], if such communication was made for the purpose of facilitating diagnosis or treatment of the patient's mental or emotional condition.
>
> Mil. R. Evid. 513(e)(2) requires a military judge to conduct a hearing before ordering the production or admission of "evidence of a patient's records or communication," defined as "testimony of a psychotherapist, or assistant to the same, or patient records *that pertain to* communications by a patient to a psychotherapist, or assistant to the same, for the purposes of diagnosis or treatment of the patient's mental or emotional condition."

*Mellette*, 82 M.J. at 379 (quoting Mil. R. Evid. 513(b)(5)). "The patient must be afforded a reasonable opportunity to attend the hearing and be heard." Mil. R. Evid. 513(e)(2). The phrase "communication made between the patient and a psychotherapist" in Mil. R. Evid. 513(a) "does not naturally include other evidence, such as routine medical records, that do not memorialize actual communications between the patient and the psychotherapist." *Mellette*, 82 M.J. at 378. "[D]iagnoses and treatments contained within medical records [including mental health records] are not themselves uniformly privileged under [Mil. R. Evid.] 513." *Id.* at 375.

### III. ANALYSIS

Petitioner alleges several errors in violation of her rights under Article 6b(a)(9), UCMJ, to be treated with fairness and with respect for her dignity and privacy: (1) the military judge erred in denying her standing; (2) the military judge failed to comply with the procedural requirements of Mil. R. Evid. 513 by ordering production of mental health records without conducting a hearing; (3) the military judge did not have authority to issue a court order to DHA because it is not a "military authority;" (4) the military judge ordered production of her protected health information without determining its relevance, necessity, and materiality; (5) issuance of the order is tantamount to an illegal government seizure; and (6) military judges do not have authority to compel production of medical and mental health records through an order vice a subpoena.

We have carefully considered Petitioner's claims. We find Petitioner has failed to show that the right to issuance of the writ is clear and indisputable, and that the issuance of the writ is appropriate under the circumstances. We briefly address issues (1) through (4).

Petitioner has provided no clear authority for us to conclude the military judge's application of R.C.M. 701 and non-application of R.C.M. 703 and Mil.

R. Evid. 513 was erroneous such that it is clear and indisputable that a writ should issue. The military judge found Petitioner to be "likely the primary witness related to one of the charged offenses in the [A]ccused's court-martial," and "defense counsel met its burden demonstrating the relevance of [Petitioner's] diagnoses, treatments, and prescriptions associated with in-patient care sought by [Petitioner] in March–April 2022 to defense preparation under R.C.M. 701." She further found that the requested records were "in the possession of DHA and accessible by Air Force military treatment facilities," thus concluding they "are within the possession, custody, and control of military authorities under R.C.M. 701(a)(2)(B)." Additionally, the military judge found that application of Mil. R. Evid. 513 was premature; no party requested any privileged records. Relatedly, the military judge found Petitioner did not have standing to be heard on the Defense's motion regarding discovery.

Petitioner has not demonstrated that the right to issuance of the writ she seeks is clear and indisputable, and she has therefore failed to show the appropriateness of the requested relief.

## IV. CONCLUSION

Petitioner's motion to reconsider court's denial of stay is **DENIED.**

The petition for extraordinary relief in the nature of a writ of mandamus under Article 6b, UCMJ, is **DENIED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court